# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00587-SCT

*CHARLES SHIRLEY, LARRY BOULDES, JIMMIE A. SHIRLEY AND WILLIE BOULDES*

*v.*

*CHRISTIAN EPISCOPAL METHODIST CHURCH*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/1998 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GARY GOODWIN |
| ATTORNEYS FOR APPELLEE: | HAL H. McCLANAHAN, III |
| | RANDOLPH WALKER |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 9/16/1999 |
| MOTION FOR REHEARING FILED: | 10/15/99; denied 01/13/2000 |
| MANDATE ISSUED: | 01/20/2000 |

## BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.

## PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is an appeal from an action filed in the Chancery Court of Lowndes County, Mississippi. The Christian Methodist Episcopal Church ("CME") filed an action against Charles Shirley, Larry Bouldes, Jimmie A. Shirley, and Willie Bouldes ("trustees") as trustees for the Cross Roads CME Church ("Cross Roads") seeking a determination that the 1.4 acre parcel of land upon which Cross Roads sat belonged to CME as well as other relief. The trustees answered the complaint and counterclaimed. CME then filed an answer and amended complaint.

¶2. The case was tried before the chancellor on January 30, 1998. The chancellor delivered her opinion on March 5, 1998, concluding that title to the property belonged to CME. Judgment was entered to that effect, dismissing the trustees' counterclaim. The trustees have appealed to this Court.

### STATEMENT OF FACTS

¶3. This is an appeal from the Chancery Court of Lowndes County, Mississippi, where CME filed an action against the trustees of Cross Roads CME Church seeking a determination that the 1.4 acre parcel of land upon which Cross Roads sits belonged to CME. CME also sought a declaration of ownership of certain personal property of Cross Roads, together with injunctive relief for possession of all of said

property, and to enjoin the trustees to allow CME's appointed ministers to preach and conduct services without interference. The trustees counterclaimed, asserting that title to the property vested in them as trustees of Cross Roads according to the language of the deed. The trustees also sought to enjoin CME, its agents, ministers, associates and bishops from trespassing upon the property owned by Cross Roads.

¶4. CME then filed an amended complaint, advancing the theory that because the trustees (the Shirleys and the Bouldes) had been removed by CME, the new trustees appointed by the CME for Cross Roads would succeed to the title to the property described in the deed.

¶5. Cross Roads, the local church at issue, was founded sometime prior to 1947, with the current church being moved to its present location in 1947. The trustees admitted at trial that Cross Roads had always been a CME church.

¶6. At the center of this conflict is a deed recorded on February 10, 1947, in Lowndes County, Mississippi. The deed shows the conveyance of a parcel of land, 1.4 acres, from R.L. Poole and Delphia J. Poole to "J.E. Spruill, Charlie Bryant, Jessie Shirley, and N.L. Poole, Trustees of the Cross Roads Colored Methodist Episcopal Church and their successors and assigns."

¶7. In 1996 a dispute arose between Cross Roads and CME. Several members of the congregation at Cross Roads, including the trustees, became dissatisfied with CME and the ministers appointed by CME to serve Cross Roads. Cross Roads voted not to pay the annual assessment to CME that year. This was the first time Cross Roads had failed to pay the assessment. Cross Roads then voted to dismiss the CME-appointed minister and to withdraw from CME.

¶8. The case was tried before the chancellor on January 30, 1998. The chancellor delivered her opinion on March 5, 1998, stating that title to the property belonged to CME. The chancellor also ordered that all personal property, including bank accounts, be turned over to CME and that the trustees were restrained and enjoined from interfering with CME's use of the property. The trustees have appealed to this Court for relief.

## STATEMENT OF THE ISSUE

### I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE CHURCH BUILDING AND PROPERTY BELONGED TO THE HIERARCHICAL CHRISTIAN METHODIST EPISCOPAL CHURCH AND NOT TO THE LOCAL CONGREGATION.

## STANDARD OF REVIEW

¶9. A limited standard of review is employed by this Court in reviewing decisions of a chancellor. *Reddell v. Reddell,* 696 So.2d 287, 288 (Miss. 1997) (citing *Carrow v. Carrow*, 642 So.2d 901, 904 (Miss. 1994)). Findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied a wrong legal standard. *Id.*

## DISCUSSION OF LAW

### I. WHETHER THE CHANCELLOR ERRED IN DETERMINING THAT THE CHURCH BUILDING AND PROPERTY BELONGED TO THE HIERARCHICAL CHRISTIAN METHODIST EPISCOPAL CHURCH AND NOT TO THE LOCAL CONGREGATION.

¶10. The trustees assert that the chancellor erred in determining that the church building, real property, and tangible and intangible personal property of Cross Roads belongs to CME. The chancellor granted CME immediate title, use and possession of the church property, both real and personal. The chancellor then granted CME possession of the books, registry, bank accounts and all personal property of the Cross Roads church, with said property to be returned within five (5) days of the Final Decree. The chancellor also enjoined the trustees (Shirleys and Bouldes) from interfering with CME's use of both the real and personal property of CME.

¶11. This Court is constitutionally restrained in deciding church property disputes. While state courts can decide the question of church property ownership, the first amendment to the United States Constitution limits the role these courts can play in resolving those disputes. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So.2d 200, 204 (Miss. 1998) (*citing Jones v. Wolf*, 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979)). As long as it is not required to interpret doctrinal matters, the court is allowed to decide the issue of property ownership. *Id.* at 205.

¶12. In *Church of God Pentecostal, Inc.,* this Court adopted the neutral approach in solving church property disputes. *Id.* at 206. The "neutral principles of law" method relies on objective concepts of trust and property law in determining property disputes. There must be a " . . . secular examination of deeds to the church property, state statutes and existing local and general church constitutions, by-laws, canons, Books of Discipline and the like to determine whether any basis for a trust in favor of the general church exists." *Id.* at 205 (*quoting Protestant Episcopal Church in Diocese of New Jersey v. Graves*, 83 N.J. 572, 417 A.2d 19, 23 (1980)). This Court went on to note that if the congregation holding the property is a subordinate member of a larger organization in which there are superior ecclesiastical tribunals with the general and ultimate control over the subordinate congregations, a court must enforce the decision of the highest tribunal of the church ruling on a question of discipline. *Id.* at 205.

¶13. In *Church of God Pentecostal, Inc.*, a national church organization, Church of God Pentecostal, sued a local church, Freewill Pentecostal Church, for injunctive relief, accounting and to quiet title to certain property on which the church was situated. *Id.* at 201. Church of God Pentecostal alleged it was the parent denomination and, as such, the rightful owner of the church property. *Id.* Church of God Pentecostal argued that because Freewill Pentecostal Church, along with its defrocked minister, were no longer recognized as part of the national organization, they were not entitled to possession, use, or enjoyment of the property. *Id.* at 201-02. The chancery court found in favor of Freewill. *Id.* at 202.

¶14. This Court affirmed the chancellor's decision. Church of God Pentecostal did not exist as a corporate entity until 1961. We held that Church of God Pentecostal could not have an express interest in the property conveyed in 1958 because Church of God Pentecostal did not exist as a corporate entity in the United States until 1961. *Id.*

¶15. We then examined the relationship between Church of God Pentecostal and Freewill and determined that Freewill did not comply with the by-laws of Church of God Pentecostal to create a constructive trust. *Id.* at 208. Church of God Pentecostal church did not exist as a corporation in Mississippi until 1993. *Id.* Freewill had no voice or vote at any conference of Church of God Pentecostal. The congregation never sent the deeds in question to the general office as required by the by-laws. *Id.* Further, assessments were sent only sporadically to the general office, with other denominations besides Church of God Pentecostal receiving monies from Freewill as well. *Id.* Freewill did not adopt nor abide by the by-laws of Church of

God Pentecostal, nor did Freewill purchase or hold the contested realty in trust for Church of God Pentecostal, nor did Freewill's actions evince an intent to be a part of Church of God Pentecostal. *Id.*

¶16. The facts in ***Church of God Pentecostal, Inc.***, are similar to those in the case *sub judice*. However, unlike ***Church of God Pentecostal, Inc.,*** there was a clear intent on the part of the local congregation to operate as a part of CME.

¶17. In order to prevail, CME must demonstrate an actual transfer of property from Cross Roads to CME, an express trust, or clear and convincing evidence showing an intent by Cross Roads to create a trust in favor of CME. *Id.* at 206. There was no evidence introduced at trial of an actual transfer of property from Cross Roads to CME. Therefore, CME must prove that an express or implied trust exists in favor of CME. In order to establish such a trust, it must be shown that Cross Roads is and was intended to be a connectional church belonging to CME.

¶18. CME consists of a mother church with subordinate connectional churches. Authority flows from the top of the organization to the bottom, with the <u>Book of Discipline</u> being the ruling body of ecclesiastical law. Any local church affiliating itself with CME must abide by the <u>Book of Discipline</u>. The local church, Cross Roads, must accept the rulings of the church's tribunal in interpreting those matters. ***Church of God Pentecostal, Inc.,*** 716 So.2d at 205.

¶19. Cross Roads has been affiliated with CME for over 50 years and is, in fact, a connectional church of CME. The current pastor, as well as numerous previous pastors testified as to the status of Cross Roads. Also testifying were a past governing bishop and the current bishop. The testimony at trial established, without a doubt, that Cross Roads was established as a CME church.

¶20. During the time Cross Roads has been a connectional church of CME, it has participated in the governing structure of CME by sending delegates to the Annual Conference as well as accepting trustees (including the trustees here) appointed by the General Conference. Cross Roads paid its annual assessment to CME. Cross Roads also accepted and paid pastors assigned to it by CME. Cross Roads accepted Sunday School literature from CME, as well as $1,000 when building the current church. It is important to note that when Cross Roads withdrew from CME, the trustees (the Shirleys and Bouldes) became disqualified as trustees and members of CME according to the <u>Book of Discipline</u>. At the annual conference held in 1997, no one from Cross Roads was nominated for the position of trustee. The Mississippi-South Annual Conference Trustees were appointed by CME to be the trustees of Cross Roads.

¶21. There is no doubt that Cross Roads was established as a CME church. Nor is there any doubt that the operations of Cross Roads during the last 50 years have been conducted as a connectional church of CME. One of the trustees testified at trial that Cross Roads paid its annual assessment to CME, paid the pastors assigned to it by CME, and sent delegates to the conferences. Trustee Shirley also admitted at trial that Cross Roads CME Church is a part of the CME.

¶22. Because Cross Roads has set itself out as a connectional church of CME, it is presumed to have followed the <u>Book of Discipline</u>. An analysis of the portions of the <u>Book of Discipline</u> governing the holding of church property reveals that the property in question has been held in trust for CME by the trustees appointed by the Annual Conference.

¶23. The 1948 <u>Book of Discipline</u>, a revision of the 1946 <u>Book of Discipline</u>, created a Board of Trustees

of CME to hold all property, both real and personal, belonging to the local church. There was also a mandate in the Book of Discipline that all deeds to property already being used for church purposes be modified to vest such title in fee simple to CME. All future deeds must contain a clause saying that the property was held in trust for CME.

¶24. The deed in question conveyed of a parcel of land to J.E. Spruill, Charlie Bryant, Jessie Shirley, and N.L. Poole, **Trustees** of the Cross Roads Colored Methodist Episcopal Church **and their successors and assigns**. The deed, which was already in existence at the time of the publication of the 1948 Book of Discipline, was not modified as required by the Book of Discipline. Because there was no modification of the original deed to conform to the Book of Discipline, we must look at the Book of Discipline in existence at the time of this action.

¶25. The 1994 Book of Discipline states that titles to all property held by local churches are held in trust for CME and are subject to the provisions of the discipline. The property in question was conveyed by deed to the trustees of Cross Roads Colored Methodist Episcopal Church and their successors and assigns. The trustees, although members of the local congregation, are appointed by the CME organization at its Annual Conference. Because the trustees are appointed by CME, it follows that the trustees are holding the property in trust for CME.

## CONCLUSION

¶26. Cross Roads was established as a CME church. Over its 50-year existence, Cross Roads has operated according to the Book of Discipline of CME. There has been a clear intent by Cross Roads that it should be considered a part of the CME national organization. As such, Cross Roads is presumed to abide by the Book of Discipline. According to the Book of Discipline, all property held by local churches is held in trust for CME. For these reasons, the judgment of the chancellor is affirmed.

¶27. **AFFIRMED.**

**BANKS, McRAE, SMITH AND COBB, JJ., CONCUR. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND MILLS, J. PRATHER, C.J., NOT PARTICIPATING.**

**WALLER, JUSTICE, DISSENTING:**

¶28. This Court is limited in its review of church disputes, as the separation of church and state is a basic constitutional provision which should not be taken lightly. This Court may not determine issues of ecclesiastical matters or doctrinal interpretation, but must resolve church property disputes as it would for any other parties, using "neutral principles of law, developed for use in all property disputes . . . ." *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 U.S. 440, 449 (1969). The majority places undue emphasis on the Book of Discipline of the hierarchal Christian Methodist Episcopal Church ("the CME") in deciding this civil, real property issue. For that reason, I respectfully dissent.

¶29. The Chancellor found that the property in dispute was bought and built upon by the Cross Roads congregation and that it was held in trust for the "Cross Roads Colored Methodist Episcopal Church." The

trustees of the Cross Roads Church were, at all times prior to this dispute, members of the local congregation. Despite the congregation's apparent membership in the larger, hierarchal CME, the property was never deeded to the CME. Therefore, title remained in the Cross Roads congregation through its trustees. It does not matter that the Cross Roads Church was once a member of the CME or that the CME had adopted a <u>Book of Discipline</u> that required all church property to be deeded to or held in trust for the CME. Under recognized property law, since the CME was never deeded the property, title remains vested in the local congregation. To hold otherwise is to give the CME some higher power to rewrite property law by simply declaring in church doctrine that it owns certain property or that the property is held in trust for its benefit. State law may not be modified by such ecclesiastical doctrines. Therefore, I respectfully dissent.

**SULLIVAN, P.J., AND MILLS, J., JOIN THIS OPINION.**