## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00111-SCT

*MISSISSIPPI DEPARTMENT OF HUMAN SERVICES*

*v.*

*TIMOTHY LEE MURR, AS GUARDIAN*

*AD LITEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/1998 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: J. D. WOODCOCK |
| ATTORNEY FOR APPELLEE: | TIMOTHY MURR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 7/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### SMITH, JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Robert Bradley Smith and Tina Marie Smith Bouquet filed petitions for modification of visitation in the Chancery Court of Pearl River County. The Mississippi Department of Human Services (MDHS) joined the action. MDHS appeals from the judgment of the chancery court in which the chancellor assessed guardian ad litem fees against MDHS and ordered that Smith and Bouquet reimburse MDHS for a portion of the fees on a periodic basis.

### STATEMENT OF FACTS

¶2. Smith and Bouquet were granted a divorce on November 13, 1995. The parties agreed to joint legal and physical custody of their son, Joshua. On October 16, 1996, Bouquet filed a petition for modification of visitation. Smith filed an answer and counter petition for modification alleging a material change of circumstances. Smith later amended his pleadings to allege physical and sexual abuse of the child. Legal custody of the child was given to the Pearl River County Department of Human Services, and, on April 29, 1997, a guardian ad litem, Timothy Lee Murr, was appointed. The order appointing the guardian ad litem stated that the assessment of costs incurred by the guardian ad litem would be reserved until further determination.

¶3. On April 16, 1998, the chancellor ordered MDHS to pay the guardian ad litem's fees and expenses of $7,075.75. Smith and Bouquet were each required to reimburse MDHS in the amount of $25 per month. The order granting the guardian ad litem's fees was approved without objection by any party. The court ordered that MDHS was to no longer have custody of the child and that MDHS was no longer required to participate in the matter in an active role until further order. MDHS subsequently paid $7,075.75 to the guardian ad litem.

¶4. The matter was tried on July 9-10, 1998, and the chancery court entered judgment on September 22, 1998. The guardian ad litem's services were terminated as of that date. On December 10, 1998, the chancery court ordered MDHS to pay the remaining $5,461.40 in guardian ad litem fees. The court ordered Smith and Bouquet to reimburse MDHS in this amount. Because Smith and Bouquet did not have the means to make a lump sum payment, the chancellor ordered Smith and Bouquet to pay $100 per month, with Smith paying $75 and Bouquet paying $25.

¶5. MDHS appealed to this Court, raising the following issues:

**I. THE CHANCERY COURT ERRED IN ORDERING MDHS TO PAY GUARDIAN AD LITEM FEES AFTER MDHS HAD BEEN REMOVED FROM ACTIVE PARTICIPATION IN THE CASE.**

**II. THE CHANCERY COURT ERRED IN ORDERING SMITH AND BOUQUET TO MAKE PERIODIC PAYMENTS TO MDHS AS REIMBURSEMENT FOR PAYMENT OF THE GUARDIAN AD LITEM FEES.**

## STANDARD OF REVIEW

¶6. When reviewing decisions of a chancellor, we employ a limited standard of review. *Shirley v. Christian Episcopal Methodist Church*, 748 So. 2d 672, 674 (Miss. 1999). "Findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied a wrong legal standard." *Id.* Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review. *Jones v. Jones*, 532 So. 2d 574, 581 (Miss. 1988).

## DISCUSSION OF LAW

**I. THE CHANCERY COURT ERRED IN ORDERING DHS TO PAY GUARDIAN AD LITEM FEES AFTER DHS HAD BEEN REMOVED FROM ACTIVE PARTICIPATION IN THE CASE.**

¶7. MDHS does not contest the chancellor's order that it pay the initial $7,075.75 in guardian ad litem fees. Rather, MDHS argues the chancellor erred in ordering it to pay the guardian ad litem fees incurred after April 16, 1998, when it was made a passive litigant in the case. The order making DHS a passive litigant states, in pertinent part, "[T]he prior custody order vesting custody of Joshua Smith in the Department of Human Services is hereby terminated as of April 16, 1998, and that the Department of Human Services is no longer required to participate in this matter in an active role until further order." MDHS argues that it may be required to pay guardian ad litem fees incurred only during the period in which it was engaged in an active role in the case.

¶8. The guardian ad litem states that the chancellor is given discretion concerning attorney fees and should not be reversed absent abuse of that discretion. *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982). Furthermore, he argues that while the court's order stated that MDHS need no longer take an active role in the case, the status of MDHS as a party to the action, active or passive, did not change.

¶9. Our rules of procedure treat guardian ad litem fees as court costs to be awarded against the non-prevailing party. Miss. R. Civ. P. 17(d); *S.C.R. v. F.W.K.* , 748 So. 2d 693 (Miss. 1999) (not an abuse of discretion to tax non-prevailing party with costs including guardian ad litem fees); *Lowrey v. Forrest County Bd. of Supervisors*, 559 So. 2d 1029 (Miss. 1990); *In re Newsom*, 536 So. 2d 1 (Miss. 1988). There is no doubt that our civil rules prescribe that a guardian ad litem be compensated for his or her efforts, and that the monies so ordered be taxed as court costs. Miss. R. Civ. P. 17(d) provides, in relevant part, that

> In all cases in which a guardian ad litem is required, the court must ascertain a reasonable fee or compensation to be allowed and paid to such guardian ad litem for his service rendered in such cause, to be taxed as a part of the cost in such action.

*Newsom*, 536 So.2d at 2.

¶10. Miss. Code Ann. § 93-5-23 also treats guardian ad litem fees as court costs. The statute reads, in pertinent part:

> Whenever in any proceeding in the chancery court concerning the custody of a child a party alleges that the child whose custody is at issue has been the victim of sexual or physical abuse by the other party, the court may, on its own motion, grant a continuance in the custody proceeding only until such allegation has been investigated by the Department of Human Services. At the time of ordering such continuance the court may direct the party, and his attorney, making such allegation of child abuse to report in writing and provide all evidence touching on the allegation of abuse to the Department of Human Services. The Department of Human Services shall investigate such allegation and take such action as it deems appropriate and as provided in such cases under the Youth Court Law (being Chapter 21 of Title 43, Mississippi Code of 1972) or under the laws establishing family courts (being Chapter 23 of Title 43, Mississippi Code of 1972).

> If after investigation by the Department of Human Services or final disposition by the youth court or family court allegations of child abuse are found to be without foundation, **the chancery court shall order the alleging party to pay all court costs and reasonable attorney's fees incurred by the defending party in responding to such allegation.**

> The court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney. Unless the chancery court's jurisdiction has been terminated, all disposition orders in such cases for placement with the Department of Human Services shall be reviewed by the court or designated authority at least annually to determine if continued placement with the department is in the best interest of the child or public.

¶11. Guardian ad litem fees, pursuant to Miss. Code Ann. § 43-21-121 (1)(e), may also be allocated out

of county funds.[1] That section allows for the appointment of a guardian ad litem "in every case involving an abused or neglected child which results in a judicial proceeding." Subsection 6 permits payment of the guardian ad litem fee, not to "exceed the hourly rate paid by the county to attorneys appointed to defend indigent criminal defendants", by the county out of the general fund "[u]pon order of the youth court."

¶12. This Court has held that judges are obligated to appoint a guardian ad litem to represent every minor alleged to be abused or neglected even if a request for one is not made. *In re of R.D.*, 658 So.2d 1378 (Miss. 1995).

¶13. In *Mississippi Dep't of Human Servs. v. Cole*, 618 So. 2d 704 (Miss. 1993), the mother filed a paternity action on behalf of her daughter. Because she had been receiving Medicaid, food stamps, and Aid For Dependent Children, the mother named MDHS as a defendant in addition to the father. The chancellor awarded attorneys fees and costs against MDHS. MDHS appealed, arguing that while it had been made a necessary party defendant because of the aid payments, it had nonetheless been excused from the litigation because no relief was being sought against MDHS. This Court reversed on the grounds that attorneys fees had never been sought against MDHS. *Cole*, 618 So.2d at 706.

¶14. Although MDHS was no longer required to actively participate in this matter, MDHS was properly found liable for partial reimbursement for guardian ad litem's fees. Despite becoming a passive participant in this case, MDHS previously became a litigant when it adopted the position of Smith and alleged child abuse. Taking a passive role in the litigation did not change MDHS's status as a party to the case. The court noted that Smith had accused Bouquet of abuse and sexual molestation and that MDHS had supported these allegations. The ultimate findings and conclusions of the court rejected the allegations of Smith and the supportive position of MDHS.

¶15. The chancellor did not abuse his discretion in assessing guardian ad litem fees to MDHS as it was a litigant to the case. As the losing party, MDHS and Smith are jointly and severally liable for the payment of the guardian ad litem fees pursuant to Miss. R. Civ. P. 17 and Miss. Code Ann. § 93-5-23.

## II. THE CHANCERY COURT ERRED IN ORDERING SMITH AND BOUQUET TO MAKE PERIODIC PAYMENTS TO DHS AS REIMBURSEMENT FOR PAYMENT OF THE GUARDIAN AD LITEM FEES.

¶16. MDHS also contends that the chancellor abused his discretion in ordering that Smith and Bouquet reimburse MDHS for the guardian ad litem fees by making periodic payments. MDHS asserts that such an "installment plan" is impermissible and amounts to an interest-free loan to Smith and Bouquet.

¶17. Miss. Code Ann. § 93-5-23 gives a chancellor the authority to order the party alleging child abuse to pay all court costs and reasonable attorney's fees incurred when the allegation of abuse is found to be without foundation. The Code does not, however, outline how such payment must be made. There are no guidelines dictating that such repayment has to be in a lump sum amount. Absent statutory direction that the payment must be made in a lump sum, we can hardly say that the chancellor abused his discretion by ordering periodic repayments.

¶18. To the contrary, it was well within the chancellor's discretion to order repayment on a periodic basis.

In *In re K.M.J.*, 758 So. 2d 402 (Miss. 2000), this Court affirmed the chancery court's order regarding payment of guardian ad litem fees. The order provided that the unsuccessful plaintiffs would be liable for 60% of the fees and that the defendants would be liable for 40% of the fees. The order also provided that in the event the plaintiffs could not pay, DHS would have to pay. The order stated that in the event DHS had to pay, it was automatically granted a judgment against the plaintiffs for the amount it paid. In formulating the order, the chancery court considered the specific circumstances of the case, particularly the likelihood that the realization of collection from the plaintiffs was extremely remote. The chancellor noted that the plaintiffs had modest monthly incomes and that the defendants were on the verge of the receipt of a substantial sum of money as an award for personal injuries received in past employment. This Court stated, "The chancery court is charged to give adequate consideration to the 'financial abilities' of the parties to pay any assessed fees, and then how the same should be apportioned, if any." *Id.* at *2 (citing *Cheatham v. Cheatham*, 537 So. 2d 435 (Miss. 1988); *Bumgarner v. Bumgarner*, 475 So. 2d 455, 456 (Miss. 1985)). The Court held that the chancellor had reached an equitable solution in light of its concern that the guardian might not be fully compensated because of the financial status of the parties. *Id.* at *3.

¶19. The chancellor likewise reached an equitable solution in the case at hand. In light of the fact that Smith and Bouquet did not have the means to make a lump sum payment of the initial $7, 075.75 awarded to the guardian ad litem, the chancery court's first order regarding the undisputed portion of the fees provided for a similar plan under which Smith and Bouquet were each required to pay $25 per month as reimbursement to DHS. The parties have stipulated that this order was approved without objection by any party. The second order was apparently entered due to these same considerations. Though there is no statute authorizing a chancellor to order such an "installment plan," this Court has also stated that the chancery court has wide discretion in fashioning the payment of costs in light of equitable principles, as evidenced by this Court's holding in *K.M.J.*

¶20. As this Court stated in *Canton v. Ross*, 157 Miss. 788, 128 So. 560, 562-63 (1930), "[C]hancery courts have large discretion in apportioning costs. Nevertheless, the exercise of such discretion is not final, but is reviewable on appeal, and if it appear [sic] that the decree apportioning the costs works a manifest injustice on any of the parties, the decree will be reversed." There is no manifest injustice worked on DHS by the chancellor's order. DHS will be reimbursed over a five-year period. DHS complains that the payment plan is the equivalent of a five-year loan. Interestingly, however, DHS approved without objection the chancellor's first order which provided that Smith and Bouquet were to reimburse DHS for the undisputed portion of the fees at a rate of $25 per month.

## CONCLUSION

¶21. The chancellor was in the best position to determine the relative financial condition of the parties and their ability to reimburse MDHS. The chancellor's payment plan is within the statutory scheme, reasonable, and equitable. The judgment of the Pearl River County Chancery Court is affirmed.

¶22. **AFFIRMED.**

   **PRATHER, C.J., BANKS, P.J., MILLS, WALLER, COBB, AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE**

**WRITTEN OPINION JOINED BY PITTMAN, P.J.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶23. While I agree that as the losing parties, MDHS and Robert Bradley Smith ("Smith") should be jointly and severally liable for the payment of guardian ad litem fees, I see no reason to hold Tina Marie Bouquet ("Bouquet"), the prevailing party, responsible for a portion of those fees. The majority also errs in allowing the $5,461.40 to be paid back to MDHS by Smith and Bouquet in the form of a five-year payment plan as such is equivalent to an interest-free loan by the state. This should be handled as a judgment which can be executed immediately by MDHS against Smith. Accordingly, I concur in part and dissent in part.

¶24. In the amendment to his counter-petition for modification of prior judgment of divorce, Smith alleged child abuse and sexual molestation. MDHS joined Smith's suit and as a direct result, the chancellor appointed a guardian ad litem "for Joshua Smith due to allegations of physical and sexual abuse." By the end of the litigation, guardian ad litem fees totaled approximately $13,000. MDHS agreed to pay $7,075.75. However, MDHS contested payment of the remaining $5,461.40, claiming that as a passive party (as of April 16, 1998) in the suit it could no longer be considered a party litigant.

¶25. The divorced parents did not have the means to make a lump sum payment. As a result, the chancellor ordered that all fees be paid by MDHS and reimbursed by the parents in monthly payments. Specifically, they were ordered to reimburse the Pearl River County Department of Human Services $100 per month with $75 to be paid by Smith and $25 by Bouquet.

¶26. Although MDHS was no longer required to actively participate in this matter pursuant to the chancellor's order on April 16, 1998, MDHS was properly found liable for partial reimbursement for guardian ad litem's fees. Despite becoming a passive participant in this case, MDHS had previously become a litigant when it adopted the position of Smith and alleged child abuse. Taking a passive role in the litigation did not change its status as a party to the case. In an "order of direction", the court noted that Smith had accused Buoquet of abuse and sexual molestation and that MDHS had supported these allegations. The ultimate findings and conclusions of judgment of the Court were contradictory to and a rejection of the averments of [Robert Smith] and the supportive position of the personnel of the said Department of Human Services of Pearl River County. MDHS does not contest paying the $7,075.75 in fees.

¶27. As one of the losing parties, MDHS was properly assessed costs under Miss. R. Civ. P. 17 and Miss. Code Ann. § 93-5-23. The chancellor did not abuse his discretion in assessing guardian ad litem fees to the Mississippi Department of Human Services as it was a litigant to the case. However, the five-year payment plan set up by the chancellor is no more than an interest-free loan that violates the Mississippi Constitution art. 13, § 258 that states in pertinent part, that "[t]he credit of the state shall not be pledged or loaned in aid of any person, association, or corporation . . . ."

¶28. According to 81A C.J.S. *States* §210 at 758 (1977),

The giving or lending of credit of the state prohibited by the constitution occurs only when such giving or lending results in creation by the state of a legally enforceable obligation on its part to pay one person an obligation incurred or to be incurred in favor of that person by another person, and no giving or lending of state's credit occurs when the state does nothing but incur liability directly to a person in whose favor an obligation is incurred. As noted by the courts, a fair exchange by the state

of value for value does not offend the prohibition as to a loan, pledge or gift of state credit.

(footnotes omitted).

¶29. The "lending or loaning money or credit" within constitutional provisions prohibiting such by the state means a transaction creating the customary relation of borrower and lender, in which money is to be borrowed for a fixed time, and the borrower promises to repay the amount borrowed at a stated time in the future with interest at a fixed rate. ***Almond v. Day***, 91 S.E.2d 660, 666 (Va. 1956) (citing ***Bannock County v. Citizens' Bank & Trust Co.***, 53 Idaho 159, 175, 22 P.2d 674 (1933) (county treasurer's deposit of county funds in bank not a loan prohibited by the constitution.) Where a statute requires the use of public funds, it does not violate the constitution's prohibition against the lending of credit where "the statute is designed to promote public interests as opposed to furthering the advantage of individuals." ***Limestone County v. Montgomery***, 226 Ala. 266, 146 So. 607, 609 (1933).

¶30. There are few Mississippi cases interpreting this provision of the constitution. In ***In re Validation of $15,000,000 Hospital Revenue Bonds***, 361 So.2d 44 (Miss. 1978), the Court upheld Hattiesburg's issuance of bonds to construct a hospital to be leased to a non-profit organization which would be repaid from revenues generated by the hospital. Important to the Court's decision was the fact that the bonds were issued for a project which would benefit the public generally. ***Id.*** at 51. In addition, the appropriation of funds for free textbooks in schools does not violate Section 258. ***Chance v. Mississippi State Textbook Rating & Purchasing Bd.***, 190 Miss. 453, 200 So. 706 (1941)( "The books belong to, and are controlled by the state . . . .").

¶31. Because the chancellor's decision in this case is, in essence, a loan from the state to Smith and Buoquet, and the purpose for the loan cannot be said to be anything other than a personal one, the arrangement dictated by the chancellor's order in this case violated Section 258.

¶32. The best interests of the children in this State are one of our court's touchstones. ***Tedford v. Dempsey***, 437 So.2d 410, 417 (Miss.1983). We have mandated that children be appointed guardian ad litems to protect their interests. In doing so, we must be ever mindful that a guardian ad litem must also be compensated in order that the child's interests be protected. To that extent, the legislature and this Court have devised statutes and/or rules to ensure that the best interests of the child are protected and that the guardian ad litem receives reasonable compensation. However, we have no rules that allow a chancellor to award fees and then order one of the paying parties to be reimbursed over five years, interest free, in an installment plan. As the losing parties in this case, MDHS and Smith are jointly and severally liable for the payment of the guardian ad litem's fees. This Court should affirm the chancellor's holding that Smith and MDHS were liable for guardian ad litem fees, but reverse and remand as to the payment plan suggested. MDHS has the legal right to receive reimbursement from Smith now, not over the next five years. On remand, the chancellor should also review the decision to force Buoquet, **the prevailing party in this case**, to pay 25% of the fees.

¶33. Accordingly, I concur in part and dissent in part.

**PITTMAN, P.J., JOINS THIS OPINION.**

1. County funds, however, are not the same as assessing costs against MDHS, a state agency.