ISHEE, J.,
 

 for the Court:
 

 ¶ 1. This appeal is brought by a purchaser of a condominium unit at a tax sale held by the City of Oxford. The mortgagee of all the condominium units, BancorpSouth Bank (Bank), received no notice of the tax sale until after the period of redemption had expired and a tax deed was issued to Holly Springs Realty Group, LLC. When the mortgagor, Van Burén Group, LLC (Van Burén), defaulted in the payment of its note to the Bank, the Bank sought to foreclose on certain property of the mortgagor including the unit Holly Springs Realty had purchased at the tax sale, unit 309. The Bank argued that because it did not receive notice of the tax sale, its mortgage lien was unaffected by the convey-
 
 *22
 
 anee of the tax sale deed; thus, it was entitled to foreclose on unit 309. The chancery court agreed and ordered a foreclosure sale of the unit. It is from this order that Holly Springs Realty appeals, raising a litany of issues which we will address in turn.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. This appeal stems from litigation by a mortgagee, the Bank, to secure payment of a promissory note made by a mortgagor, Van Burén. Van Burén executed a promissory note in September 2001 in favor of the Bank in the amount of $5.4 million to build a 30-unit condominium, the Van Burén Condominium, in Oxford. In order to secure payment of the note, Van Burén executed a deed of trust in favor of the Bank on the entire condominium. The debt was to be repaid to the Bank through the sale of condominium units by Van Bu-rén. As the units were sold, the note was renewed from time to time to show the decreasing amount owed by Van Burén. Each condo unit sold in the $300,000 range.
 

 ¶ 3. Twenty-one units were sold by Van Burén, and the proceeds of the sales were remitted to the Bank less costs, expenses, and commission, which the Bank credited to the debt and for which it executed partial releases of the deed of trust for the units sold. However, the Bank discovered that Van Burén had sold at least five of the condominium units without its knowledge or consent and without remitting any of the money from the sale to the Bank. These units were not released from the Bank’s deed of trust.
 

 ¶ 4. Van Burén defaulted in making payments on the note, and in October 2007, the Bank filed for a declaratory judgment setting out the rights of the parties and for the immediate judicial foreclosure of unit 309; if that sale failed to satisfy the debt, then the Bank sought the sale of the five undisclosed units — units 111, 102, 201, 207, and 303.
 

 ¶ 5. The legal action named Van Burén and eleven other entities and individual unit owners as defendants. The defendants included Claiborne Frazier, Shelby K. Brantley Jr, and Robert Crumpton, members of Van Burén; Austin Frazier and C.E. Frazier, two of the guarantors of the indebtedness owed by Van Burén; and five purchasers to whom Van Burén had sold condominium units without remitting any of the proceeds to the Bank. At the time the foreclosure was filed, the Bank thought that unit 309 was owned by Van Burén since it had received no payment from the sale of the- unit and had not executed a partial release of the deed of trust as to unit 309. Accordingly, the Bank stated in its filing that unit 309 remained subject to the deed of trust and served as collateral for the payment of the debt. On January 24, 2008, a default judgment was entered as to defendants Claiborne Frazier, Austin Frazier, and C.E. Frazier in the amount of $1,214,533.
 

 ¶ 6. After the foreclosure pleading was filed by the Bank on October 17, 2007, Holly Springs Realty applied for and received a tax deed from the City of Oxford; the tax deed was recorded in the. office of the Chancery Clerk of Lafayette County on February 15, 2008. Unknown to the Bank, the City of Oxford had held a tax sale on August 29, 2005, at which it sold unit 309 to Holly Springs Realty for $472.68.
 
 [1]
 
 It is undisputed that prior to the expiration period fixed by law for the re
 
 *23
 
 demption of unit 309 from the tax sale, no notice was given to the Bank, as the mortgage lienholder. The City of Oxford failed to notify the Bank as a lienholder of the tax sale as required by Mississippi Code Annotated sections 27-43-4 and -5 (Rev. 2006) and of the running of the two-year redemption period. Some time in March 2008, the Bank became aware of Holly Springs Realty’s tax deed on unit 309. On March 28, 2008, the Bank and Holly Springs Realty entered into an agreed order that Holly Springs Realty would be refunded all the money it had paid for Van Buren’s taxes plus 18% interest on the aforesaid amounts. In exchange, Holly Springs Realty agreed that the tax deed would be set aside as to the mortgage interest of the Bank. Some of the agreed order quotes a part of Mississippi Code Annotated section 27-43-11 (Rev.2006), which provides that failure to give notice of a tax sale to a lien holder “shall render the tax title void as to such lienor[].”
 

 ¶ 7. In April 2008, the Bank petitioned the chancery court to join Holly Springs Realty as a necessary and indispensable party for the limited purpose of determining title to unit 309. The Bank said that it was about to foreclose on unit 309 and that because of its tax deed, Holly Springs Realty was a necessary party. The motion was granted.
 

 ¶ 8. There was extensive briefing and oral argument on various motions. In its order of foreclosure on unit 309, the chancery court noted that the Bank had not received notice of the tax sale and the running of the redemption period as required by law — a point which was not disputed. The chancery court found that because of this lack of notice, the mortgage lien of the Bank was unaffected by the tax sale and was a first, prime, and paramount lien on unit 309. The chancellor noted that there was still approximately $1.3 million left owing on the Van Burén note. The chancellor then ordered that unit 309 be sold at a foreclosure sale and the proceeds applied to this debt. The chancellor further ordered that the $21,533.69 in taxes, which Holly Springs Realty had placed in the registry of the court, were to be delivered to Holly Springs Realty.
 

 ANALYSIS
 

 ¶ 9. When reviewing a decision of a chancellor, the appellate court employs a limited standard of review.
 
 Shirley v. Christian Episcopal Methodist Church,
 
 748 So.2d 672, 674 (¶ 9) (Miss.1999). The findings of a chancellor will not be disturbed on review unless the chancellor was manifestly wrong, clearly erroneous, or applied a wrong legal standard.
 
 Id.
 
 Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review.
 
 Jones v. Jones,
 
 532 So.2d 574, 581 (Miss.1988).
 

 ¶ 10. Before proceeding, it is useful, if not outcome determinative, to state exactly what Holly Springs Realty’s legal status is in this litigation. Holly Springs Realty is the holder of a tax title to unit 309. A valid tax title cuts off all the rights of the former owner and vests such rights in the grantee named in the tax deed. However, the failure of a clerk to give notice to a lienor following the tax sale and before the period of redemption renders the tax sale void as to such lienor. Miss.Code Ann. § 27-43-11;
 
 Santa Cruz v. State,
 
 223 Miss. 617, 621, 78 So.2d 900, 901 (1955). It is undisputed that the Bank received no notice from the City of Oxford before the running of the redemption period. As the case law and statute make clear, Holly Springs Realty’s tax deed was of no effect to the Bank — the unnoticed lienor. Holly Springs Realty’s status as a tax deed holder does it no good. The tax
 
 *24
 
 sale was not operative against the Bank, and the chancellor was, therefore, correct in giving the Bank the relief it sought— foreclosure on unit 309.
 

 ¶ 11. With that being said, we will turn to the twelve issues which Holly Springs Realty raises on appeal. Where possible we will consolidate the issues and give them a summary disposition. We will quote Holly Springs Realty’s allegations of error verbatim.
 

 I.THE COURT ERRED IN GRANTING SUMMARY JUDGMENT AND FORECLOSE [SIC] AGAINST APPELLANT WHERE APPELLANT WAS SERVED WITH A COMPLAINT THAT DID NOT CONTAIN APPELLANT’S NAME, MAKE ANY CLAIM AGAINST APPELLANT OR CONTAIN ANY OPERATIVE FACTS TO CONNECT APPELLANT TO THE CASE. '
 

 ¶ 12. It is true that the initial complaint and amended complaint did not list Holly Springs Realty as a party. The reason for this is because at the time the complaints were filed, the Bank had no notice that Holly Springs Realty should be a defendant since the Bank had no notice of the tax sale. Further, this issue is without merit for the obvious reason that Holly Springs Realty was joined as a party pursuant to a June 5, 2008, order of the court which granted the Bank’s petition to join Holly Springs Realty as a necessary and indispensable party for the limited purpose of determining title to the property. Further, as is pointed out by the Bank, Holly Springs Realty made an appearance in the lawsuit. One waives process and service upon making a general appearance.
 
 Isom v. Jemigan,
 
 840 So.2d 104, 107 (¶ 9) (Miss.2003). By voluntarily appearing and fully participating in the litigation, Holly Springs Realty waived service of. process and entered a general appearance for all purposes. Therefore, this issue is without merit.
 

 II. THE CHANCELLOR ERRED BY ALLOWING PLAINTIFF TO DETERMINE WHICH PROPERTY SHOULD BE CHARGED WITH THE PAYMENT OF THE DEBT INSTEAD OF REQUIRING PLAINTIFF TO STAND QUIETLY BY WHILE THE DEFENDANT OR DEFENDANTS PRESENTED THEIR CLAIMS TO THE COURT WITHOUT INTERFERENCE FROM ... PLAINTIFF.
 

 III. THE CHANCELLOR ERRED IN FINDING THAT ACCORDING TO THE INVERSE ORDER OF ALIENATION RULE, A PROPERTY PURCHASED AT A TAX SALE SHOULD BE SOLD FOR THE BENEFIT OF PROPERTIES ALIENED FROM THE MORTGAGOR, EVEN THROUGH [SIC] A TAX TITLE IS A PERFECT TITLE BESTOWED BY THE SOVEREIGN FREE AND CLEAR OF ANY EQUITABLE BURDEN TO ANY OTHER PROPERTY.
 

 ¶ 13. These two arguments must fail for the same reason as set out above— Holly Springs Realty’s tax deed does not apply to the Bank. Incredibly, Holly Springs Realty asserts that the party which brought the action, the Bank, should “stand quietly by” while the chancellor determines who should pay the debt of Van Burén. The Bank was the plaintiff below and brought the foreclosure action to collect its debt. The Bank lent the money and took a deed of trust and mortgage on the property to secure its loan. The mortgagee, Van Buren, defaulted on the payment of the note; and pursuant to its agreement with Van Burén, the Bank sought foreclosure on Van Buren’s property. The Bank met the basic rules of pleading by stating its claim for relief. M.R.C.P. 8. As the litigation progressed, it
 
 *25
 
 brought forth its proof that unit 309 was one of the properties covered by the deed of trust. There is no requirement that a plaintiff must “stand quietly by” as its claim is litigated by others. This issue is without merit.
 

 ¶ 14. In its third issue, Holly Springs Realty claims the chancellor should have invoked the equitable doctrine of inverse order of alienation to decide how the units should be sold.
 
 See Pongetti v. Bankers Trust Sav. and Loan Ass’n,
 
 368 So.2d 819 (Miss.1979). The doctrine provides:
 

 [W]here land subject to a lien has been alienated in separate parcels and to different persons successively, a mortgagee or other lienor must first satisfy its lien out of the land remaining in the grantor or original owner, if possible[.][I]f that land is insufficient to satisfy the debt, the creditor must resort to the separate parcels which have been conveyed successively in the inverse order of their alienation.
 

 53 Am.Jur.2d
 
 Marshalling Assets
 
 § 34 (2006). As the encyclopedia further states, the doctrine is based upon the presumption that unless expressed by contract, one person’s property should not be used to pay the debts of another.
 
 Id.
 
 In other words, a mortgagee must sell or foreclose upon what the mortgagor has left first because the mortgagor is responsible for the payment of the debt and not the others to whom he has sold property; then if that sale does not cover the debt, the mortgagee must sell in the inverse order of which the property was sold by the mortgagee. Thus the doctrine is invoked when land subject to a lien has been alienated to different persons by the mortgagor and the mortgagee seeks to sell or foreclose upon the separate property. Here the property is subject to the lien of the Bank and has been alienated to different persons by the mortgagor, Van Burén, which held title to unit 309 until it was lost in the tax sale. As we have repeatedly stated, the failure of the City of Oxford to give notice of the redemption period to the Bank made the tax sale to Holly Springs Realty void as to the Bank. Therefore, Holly Springs Realty cannot call upon this Court to evoke the equitable principle.
 

 ¶ 15. This issue is without merit.
 

 IV. WHETHER PLAINTIFF SECRETLY GAVE DEFENDANTS IN AN IN REM EQUITY ACTION PERMISSION NOT TO FILE AN ANSWER UNTIL TOLD TO DO SO, AND THESE PARTIES THEN MISLED APPELLANT ABOUT THIS MARY CARTER-TYPE AGREEMENT, THUS HARMING APPELLANT, [AND] DID THE CHANCELLOR ERR IN REFUSING TO ESTOP PLAINTIFF FROM RECOVERY AGAINST APPELLANTt?]
 

 V. DID THE CHANCELLOR ERR WHEN HE DENIED APPELLANT’S MOTION TO DISMISS CASE BECAUSE FIVE NECESSARY AND INDISPENSABLE CO-DEFENDANTS WERE NOT SERVED WITHIN 120 DAYS OF THE FILING OF THE ORIGINAL COMPLAINT, AS WELL AS FAILURE TO JOIN OTHER NECESSARY AND INDISPENSABLE PARTIES AND PLAINTIFF’S FAILURE TO FULLY PROSECUTE ITS CASE[?]
 

 VI. DID THE CHANCELLOR, BY ALLOWING PLAINTIFF TO UNILATERALLY GRANT ENLARGEMENT OF TIME BY WHICH CERTAIN FAVORED PARTIES MIGHT ANSWER, SHOW SUCH BIAS IN FAVOR OF PLAINTIFF THAT APPELLANT WAS NOT ASSURED OF RECEIVING A FAIR HEARING[?]
 

 
 *26
 
 VII. DID THE CHANCELLOR ABUSE HIS DISCRETION BY FAILING TO ENTER A JUDGMENT OF DEFAULT AGAINST FIVE CO-DEFENDANTS WHO INTENTIONALLY FAILED TO FILE AN ANSWER WITHIN ONE YEAR, WHEN SUCH FAILURE WAS APPARENTLY A MATTER OF TRIAL STRATEGY?
 

 VIII. IN AN IN REM ACTION, WHERE THE COURT MUST DECIDE IF OR HOW PROPERTIES ARE TO BE CHARGED FOR THE PAYMENT OF A DEBT, DID THE CHANCELLOR ERR IN GRANTING SUMMARY JUDGMENT AND FORECLOSURE AGAINST APPELLANT WHEN FIVE OTHER DEFENDANTS OWNING PROPERTY SUBJECT TO THE DEBT HAD NOT FILED AN ANSWER[?]
 

 ¶ 16. These five issues involve the five condo owners to whom Van Burén had sold units but did not submit the money from the sale to the Bank. The five were named as defendants in the initial complaint before the Bank even learned of Holly Springs Realty’s tax deed.
 

 ¶ 17. Holly Springs Realty continually describes the five as the “favored parties” of the Bank and claims that the five have a “Mary Carter-type” agreement with the Bank. Holly Springs Realty claims that the five “sought permission from the [Bank] not to file an answer, and were told they did not have to file an answer until told to do [sic].” Then immediately following in its brief, Holly Springs Realty states the so-called agreement was not in the chancery court record and that the Bank took affirmative steps to keep Holly Springs Realty from learning of the “agreement.” The places in the record to which Holly Springs Realty points this Court to support this allegation are in the arguments of its counsel. No evidence of such an agreement was introduced into the record. In fact, the chancellor took action against Holly Springs Realty’s freewheeling accusations against the Bank, striking the words “false and misleading” and “unlawful” from its pleadings. The chancellor told counsel for Holly Springs Realty: “You shouldn’t be calling something illegal unless you absolutely can prove it’s illegal. I think it can be damaging [to] them.”
 

 ¶ 18. A Mary Carter agreement
 
 [2]
 
 also known as a “loan-receipt agreement,” is an agreement between a plaintiff and one or more defendants in which the settling defendant “loans” a stated amount of money to the plaintiff and is entitled to be repaid the loan from any recovery the plaintiff receives from a non-settling defendant. The essential feature of the so-called Mary Carter agreement is the repayment of the loan from money recovered from the non-settling co-defendants. If there is no recovery, there is no repayment.
 

 ¶ 19. Although Holly Springs Realty argued that there was a “Mary Carter-type” agreement between the Bank and the other defendants, it offered no proof of such an agreement. Without proof, these bare allegations must fail.
 

 ¶ 20. We find these issues are without merit.
 

 IX.WHERE PLAINTIFF AND APPELLANT ENTERED INTO AN AGREED ORDER OVER A PROPERTY SOLD AT A TAX SALE, WHERE APPELLANT AGREED TO RECOGNIZE PLAINTIFF’S LIEN AND PLAINTIFF AGREED TO REIMBURSE APPELLANT FOR ALL TAXES PAID, AND PLAINTIFF DID NOT REIMBURSE APPELLANT
 
 *27
 
 AND BEGAN FORECLOSURE ON DEFENDANT PRIOR TO REPAYING THE AGREED AMOUNT, DID THE CHANCELLOR ERR IN NOT FINDING THAT ... PLAINTIFF’S ACTIONS WERE A MATERIAL BREACH OF THE AGREED ORDER WHICH RESULTED IN THERE BEING NO LIEN ON THE PROPERTY?
 

 ¶ 21. Holly Springs Realty asserts that the Bank entered into an agreed order with it and then breached the terms of the order; therefore, the agreement should be nullified because of the Bank’s non-compliance and further that the Bank should lose its lien on unit 309. Holly Springs Realty claims the agreed order was a “settlement agreement intended to avoid litigation.” Our review of the agreed order is that it is really no more than a restatement of the relevant law and the facts of the case. The first seven paragraphs explain the Bank’s mortgage and Van Buren’s breach and the fact that five units are subject to the Bank’s lien. The document then states that because Van Burén did not pay its City of Oxford taxes for the year 2004 on unit 309, Holly Springs Realty was able to purchase it at a tax sale on August 29, 2005, for $472.68. The agreement notes that the Bank did not receive notice of the running of the redemption period as it should have by law. The agreement then notes that Holly Springs Realty paid all outstanding real estate taxes on the property which totaled $21,533.69. The Bank agreed to repay this amount to Holly Springs Realty, and Holly Springs Realty agreed to set the tax deed aside as it pertained to the Bank. That was the whole agreement.
 

 ¶ 22. We fail to see how the agreement was breached because, by law, Holly Springs Realty’s tax deed did not apply to the Bank, so the parties merely agreed to follow the law. As to the taxes paid by Holly Springs Realty on unit 309, the final order of foreclosure, the very order from which Holly Springs Realty appeals, referenced the agreed order and provided that the Bank should reimburse Holly Springs Realty in the amount of $21,533.69 plus 18% interest from February 15, 2008, and the amount of $472.68 plus 18% interest from the date of the tax sale. This issue is without merit.
 

 X. WHERE THE CHANCELLOR STATED THAT HE WAS BASING HIS DECISION TO ORDER FORECLOSURE OF APPELLANT’S PROPERTY IN LARGE PART ON THE FACT THAT THE FIVE NON-ANSWERING DEFENDANTS HAD PURCHASED THEIR PROPERTY IN AN “ARM’S LENGTH TRANSACTION,” AND THERE WAS NO EVIDENCE TO SUPPORT THIS FINDING OF FACT, DID THE CHANCELLOR ERR IN GRANTING SUMMARY JUDGMENT AND FORECLOSURE AGAINST APPELLANT[?]
 

 ¶ 23. The basis for this assignment of error appears to be the following exchange between the attorney for Holly Springs Realty and the chancellor during a motion hearing:
 

 THE COURT: Here is something that is troubling me, is that these other units, these were purchasers, arms-length transaction with the Van Burén Group. And so anything you have an arms-length transaction that puts it on a higher scale. Unit 309 is a buyer-beware action. You buy it at a tax sale as a buyer-beware. You buy whatever you get. It’s not an arms-length transaction. And under that theory, unit 309 was the only piece of property that Van Burén owned. And if BancorpSouth was going to start foreclosure that would be the
 
 *28
 
 piece of property they would have to go to first.
 

 [[Image here]]
 

 THE COURT: Well, is it — is it your position that Holly Springs Realty Group had an arms-length transaction in the purchase of this property?
 

 MR. HURDLE: We — it was purchased at a tax sale and—
 

 THE COURT: A buyer-beware tax sale.
 

 MR. HURDLE: Certainly it’s a buyer-beware tax sale. However, that does not mean that our rights are inferior to any other property owners.
 

 [[Image here]]
 

 THE COURT: If that’s the situation then Mississippi law has changed, because Mississippi law has always favored the property owner. And that’s the reason that they have put contingencies in there that everybody has got to be notified of the tax deed, and if they are not notified then it’s void.
 

 ¶ 24. Again we point out that the chancellor stated no more than what is the law. In a suit by a tax-sale purchaser against the property owner, “the rule of caveat emptor is strictly applied against the purchaser.... The rule applies where the tax was legally assessed but the proceedings to sell were defective....” 72 Am.Jur.2d
 
 State and Local Taxation, Rights and Remedies of Purchaser 3. Against the Property Owner
 
 § 953 (2001). Further, Mississippi law has always favored the property owner; and as the chancellor points out, that is why a statute divesting a property owner of his ownership, like the tax-sale laws, must be strictly followed.
 

 ¶ 25. We have carefully looked at the chancery court’s opinion issued at the conclusion of the motion hearing and can find no place in which the chancellor cites arms-length transactions versus buyer-beware purchases as the basis of his decision. Instead, in deciding the issue he quoted only the law that the Bank was entitled to foreclose on unit 309 because it had not received notice of the redemption from the City of Oxford.
 

 ¶ 26. This issue is without merit.
 

 XI. [WHERE] A PERSON SUCH AS APPELLANT WHO OWNS PROPERTY SUBJECT TO A MORTGAGE WITH NO PERSONAL LIABILITY ON THE DEBT IS IN EFFECT A SURETY UP TO THE VALUE OF HIS PROPERTY!,] DID THE CHANCELLOR ERR IN FAILING TO FIND THAT PLAINTIFF’S DISHONEST BEHAVIOR AND BAD FAITH TOWARD[ ] APPELLANT RELEASE [SIC] APPELLANT FROM ITS DUTY AS A SURETY AND THUS ACTED TO ESTOP PLAINTIFF FROM FORECLOSING ON APPELLANT^]
 

 ¶ 27. Holly Springs Realty’s argument regarding suretyship was never put before the chancellor for decision. In neither its brief of the appellant nor its reply brief is this Court pointed by Holly Springs Realty to the section of the record where the issue was put before the chancellor. The trial court will not be put in error on matters which were not submitted to it for review.
 
 Holland v. State,
 
 587 So.2d 848, 868 (Miss.1991).
 

 ¶ 28. This issue is procedurally barred.
 

 XII. IN A FORECLOSURE ACTION, DID THE CHANCELLOR ERR IN ORDERING THAT THE PROPERTY BE PARTITIONED IN FORECLOSURE WHEN APPELLANT, THE ONLY PROPERTY OWNER THAT FILED AN ANSWER, REQUESTED THAT THE PROPERTY BE SOLD AS A WHOLE OR NOT AT ALL[?]
 

 
 *29
 
 ¶ 29. When the Bank filed to foreclose after Van Buren’s default, it determined that it would start with the property still owned by Van Burén — unit 309. As the litigation progressed, the Bank found out that unit 309 had been sold by the City of Oxford to Holly Springs Realty for unpaid taxes. Knowing that it had not received notice of the tax sale and knowing that its hen had survived, the Bank continued on as it had started and was granted foreclosure on unit 309. The Bank received its right to foreclose from its deed of trust which stated: “Trustee shall at the request of the Secured Party sell the Property conveyed, or a sufficiency thereof, to satisfy the indebtedness at public outcry to the highest bidder for cash.” There is no requirement in the deed of trust specifying that the property must be sold as a whole. The decision on how the Bank would recover its investment was up to the Bank. We find no merit to Holly Springs Realty’s argument.
 

 ¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., MYERS, P.J., ROBERTS AND CARLTON, JJ., CONCUR. LEE, P.J., IRVING, GRIFFIS, BARNES AND MAXWELL, JJ., NOT PARTICIPATING.
 

 [1]
 

 . Van Burén also failed to pay City of Oxford and Lafayette County taxes for the tax years 2005, 2006, and 2007. Holly Springs Realty took it upon itself to pay all of these outstanding taxes amounting to a payment totaling $21,533.69.
 

 [2]
 

 .
 
 See Booth v. Maty Carter Paint Co.,
 
 202 So.2d 8 (Fla.Dist.Ct. 1967).